IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAYMOND J. MENASION | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-cv-00871-L |
| | § | |
| NATIONWIDE PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY | § | |
|     *Defendant.* | § | |

**DEFENDANT NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY'S FIRST AMENDED ANSWER AND DEFENSES TO PLAINTIFF'S ORIGINAL PETITION**

Defendant Nationwide Property and Casualty Insurance Company ("Nationwide") files this Amended Answer and Defenses to Plaintiff's Original Petition, respectfully showing the Court as follows:

## I.    ANSWER

Nationwide makes the following admissions and denials to the claims of Plaintiff Raymond Menasion ("Plaintiff") as authorized by Federal Rule of Civil Procedure 8(b):

## I.
## DISCOVERY CONTROL PLAN LEVEL

1.     Nationwide denies that discovery in this case should be conducted under the Texas Rules of Civil Procedure. Discovery should be conducted pursuant to the Federal Rules of Civil Procedure and this Court's scheduling order.

## II.
## PARTIES & SERVICE

2.     Upon information and belief, Nationwide admits the allegations set forth in the first paragraph in Section II of Plaintiff's Original Petition.

1

3.     Nationwide admits it engages in the business of insurance in Texas, including taking and receiving applications for insurance, receiving and collecting premiums, and issuing insurance policies to Texas consumers. Nationwide denies the remaining allegations set forth in the second paragraph under Section II of Plaintiff's Original Petition.

4.     Nationwide admits it may be properly served by serving Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701. Nationwide admits it has been served, answered, and appeared in this case. Answering further, Nationwide is organized under the laws of Ohio and maintains its principal place of business in Ohio.

### III.
### JURISDICTION & VENUE

5.     The first paragraph under Section III of Plaintiff's Original Petition addresses venue in Texas state court and does not require a response from Nationwide.  To the extent a response is required, Nationwide admits that venue is proper in the United States District Court for the Northern District of Texas, Dallas Division.  Nationwide further admits the property at issue is situated within the Dallas Division of the Northern District of Texas. Nationwide denies the remaining allegations set forth in the first paragraph under Section III of Plaintiff's Original Petition.

6.     The second paragraph under Section III of Plaintiff's Original Petition also addresses venue in Texas state court and does not require a response from Nationwide. To the extent a response is required, Nationwide admits that venue is proper in the United States District Court for the Northern District of Texas, Dallas Division.

## IV.
## FACTS

7.    Nationwide admits it issued policy number 78 42 HR 101073 issued to Raymond J. Menasion with effective dates August 26, 2019 to August 26, 2020 (the "Policy"). Nationwide admits the Policy provided insurance to the property located at 1028 Bluebonnet Drive, Irving, Texas 75060-4550 (the "Property") subject to the terms, conditions, exclusions and limitations of the Policy. Plaintiff alleges that a wind and hail storm in March of 2020 damaged the Property. Plaintiff also alleges that a fire occurred at the Property in February of 2020. Nationwide denies the remaining allegations set forth in the first paragraph under Section IV of Plaintiff's Original Petition.

8.    Nationwide admits Plaintiff reported a claim to Nationwide under the Policy for alleged fire damage occurring on or about February 13, 2020 to which Nationwide assigned claim number 416437-GK (the "Fire Claim"). Nationwide admits Plaintiff reported a claim to Nationwide under the Policy for alleged hail and wind occurring on or about March 9, 2020 to which Nationwide assigned claim number 454540-GL (the "Hail Claim"). Nationwide admits it was required to adjust these claims in accordance with statutory and common law duties and the Policy. Nationwide denies the remaining allegations set forth in the second paragraph under Section IV of Plaintiff's Original Petition including the allegations in the four bullet points of this paragraph.

9.    Nationwide admits both the Fire Claim and Hail Claim were reported on April 13, 2020. Nationwide admits Plaintiff made claim for specific damages to which Plaintiff and/or his public adjusters alleged resulted from the Fire Claim and/or the Hail Claim. Nationwide denies the remaining allegations set forth in the third paragraph under Section IV of Plaintiff's Original Petition.

10.    Nationwide admits Plaintiff hired a public adjuster with respect to the Fire Claim and Hail Claim. Nationwide admits it retained AllCat Claims Service to inspect the Property for the Fire Claim and that this inspection occurred on May 4, 2020. Nationwide further admits it retained

Hancock Claims Consultants to inspect the Property under the Hail Claim and that this inspection occurred on April 15, 2020. Nationwide further admits it retained engineer Tommy Tolson for additional investigation into the Hail Claim and that Tolson inspected the Property on May 4, 2020. Nationwide admits it retained Catastrophe Construction Services, Inc. representative Jeff Moreland to inspect the Property under both the Hail and Fire Claims and that this inspection occurred on January 7, 2021. Nationwide cannot admit or deny the allegations as to what Plaintiff's public adjuster told Plaintiff or Plaintiff's public adjuster's perceptions about the resolution of the Fire Claim and Hail Claim for lack of knowledge and information sufficient to form a belief and thus denies these allegations. Nationwide denies the remaining allegations set forth in the fourth paragraph under Section IV in Plaintiff's Original Petition.

11.     Nationwide admits it requested a recorded statement from Plaintiff with respect to the Fire Claim. Specifically, Nationwide admits it sought a recorded statement because Plaintiff reported the Fire Claim two months after the fire occurred; Plaintiff replaced the air conditioning unit where the fire originated and did not preserve the air conditioning unit where the fire started such that it could not be inspected. Nationwide further admits Plaintiff provided a recorded statement on April 20, 2020. Nationwide denies the remaining allegations set forth in the fifth paragraph under Section IV of Plaintiff's Original Petition.

12.     Nationwide cannot admit or deny the allegations as to what Plaintiff's public adjuster "had been expecting to occur." Nationwide denies the remaining allegations set forth in the sixth paragraph under Section IV in Plaintiff's Original Petition.

13.     Nationwide admitted it partially denied Plaintiff's Fire Claim and partially denied Plaintiff's Hail Claim. Answering further, Nationwide admits it issued payment under the Policy totaling $5,441.91 for the Fire Claim and $7,364.79 for the Hail Claim. Nationwide denies the

remaining allegations set forth in the seventh paragraph under Section IV in Plaintiff's Original Petition.

14.     Nationwide admits Plaintiff reported the Hail Claim under the Policy. Nationwide admits Plaintiff requested Nationwide issue Policy benefits for damages Plaintiff alleged resulted from the Hail Claim. Nationwide denies the remaining allegations set forth in the eighth paragraph under Section IV in Plaintiff's Original Petition.

15.     Nationwide admits its retained engineer, Tommy Tolson, observed that "hailstones up to 1.1" in diameter were reported during storms on May 24, 2011, April 3, 2012, and April 19, 2020. Up to 3/4" diameter hail was reported on March 9, 2019." In addition, Nationwide admits damage resulting from the Hail Claim was estimated and it paid $7,364.79 to Plaintiff as a result. Nationwide denies the remaining allegations set forth in the ninth paragraph under Section IV in Plaintiff's Original Petition.

16.     Nationwide admits it issued Policy benefits arising from the Hail Claim to replace the roof over the garage at the Property. Nationwide admits it included an allowance to individually replace damaged shingles on the main dwelling roof at the Property. Nationwide denies the remaining allegations set forth in the tenth paragraph under Section IV in Plaintiff's Original Petition.

17.     Nationwide admits it issued $7,364.79 to Plaintiff for payment arising from the Hail Claim. Nationwide agrees that it retained engineer Tommy Tolson to inspect the Property and that this inspection occurred on May 4, 2020. Tolson opined that the roof over the garage required replacement and identified limited hail damage to the main dwelling roof such that it could be repaired and did not require replacement. Nationwide denies the remaining allegations set forth in the eleventh paragraph under Section IV in Plaintiff's Original Petition.

18.     Nationwide admits it issued payment under the Policy totaling $5,441.91 for the Fire Claim and $7,364.79 for the Hail Claim. Nationwide denies the remaining allegations set forth in the twelfth paragraph under Section IV in Plaintiff's Original Petition.

19.     Nationwide admits it issued payment under the Policy totaling $5,441.91 for the Fire Claim and $7,364.79 for the Hail Claim. Nationwide denies the remaining allegations set forth in the thirteenth paragraph under Section IV in Plaintiff's Original Petition.

20.     Nationwide denies the allegations set forth in the fourteenth paragraph under Section IV in Plaintiff's Original Petition.

21.     Nationwide denies the allegations set forth in the fifteenth paragraph under Section IV in Plaintiff's Original Petition.

22.     Nationwide denies the allegations set forth in the sixteenth paragraph under Section IV in Plaintiff's Original Petition.

23.     Nationwide denies the allegations set forth in the seventeenth paragraph under Section IV in Plaintiff's Original Petition.

24.     Nationwide denies the allegations set forth in the eighteenth paragraph under Section IV in Plaintiff's Original Petition.

25.     Nationwide denies the allegations set forth in the nineteenth paragraph under Section IV in Plaintiff's Original Petition.

26.     Nationwide denies the allegations set forth in the twentieth paragraph under Section IV in Plaintiff's Original Petition.

27.     Nationwide denies the allegations set forth in the twenty-first paragraph under Section IV in Plaintiff's Original Petition.

28.     Nationwide denies the allegations set forth in the twenty-second paragraph under Section IV in Plaintiff's Original Petition.

29.     Nationwide denies the allegations set forth in the twenty-third paragraph under Section IV in Plaintiff's Original Petition.

30.     Nationwide denies the allegations set forth in the twenty-fourth paragraph under Section IV in Plaintiff's Original Petition.

**V.**
**CAUSES OF ACTION**

**A.  BREACH OF CONTRACT AGAINST NATIONWIDE**

31.     Nationwide denies the allegations set forth in Section V.A. of Plaintiff's Original Petition.

**B.  NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**

        **1.  UNFAIR SETTLEMENT PRACTICES AGAINST NATIONWIDE**

32.     Nationwide denies the allegations set forth in the first paragraph in Section V.B.1 of Plaintiff's Original Petition.

33.     Nationwide denies the allegations set forth in the second paragraph in Section V.B.1 of Plaintiff's Original Petition.

34.     Nationwide denies the allegations set forth in the third paragraph in Section V.B.1 of Plaintiff's Original Petition.

35.     Nationwide denies the allegations set forth in the fourth paragraph in Section V.B.1 of Plaintiff's Original Petition.

36.     Nationwide denies the allegations set forth in the fifth paragraph in Section V.B.1 of Plaintiff's Original Petition.

37.     Nationwide denies the allegations set forth in the sixth paragraph in Section V.B.1 of Plaintiff's Original Petition.

## 2.   THE PROMPT PAYMENT OF CLAIMS AGAINST NATIONWIDE

38.     Nationwide denies the allegations set forth in the first paragraph in Section V.B.2 of Plaintiff's Original Petition. Answering further, Nationwide asserts Tex. Ins. Code § 542.060 speaks for itself.

39.     Nationwide denies the allegations set forth in the second paragraph in Section V.B.2 of Plaintiff's Original Petition.

40.     Nationwide denies the allegations set forth in the third paragraph in Section V.B.2 of Plaintiff's Original Petition.

41.     Nationwide denies the allegations set forth in the fourth paragraph in Section V.B.2 of Plaintiff's Original Petition.

## C.  BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

42.     Nationwide denies the allegations set forth in the first paragraph in Section V.C of Plaintiff's Original Petition.

43.     Nationwide denies the allegations set forth in the second paragraph in Section V.C of Plaintiff's Original Petition.

## VI.
## <u>KNOWLEDGE</u>

44.     Nationwide denies the allegations set forth in Section VI of Plaintiff's Original Petition.

**VII.**
**<u>DAMAGES</u>**

45.     Nationwide denies the allegations set forth in the first paragraph under Section VII of Plaintiff's Original Petition.

46.     Nationwide denies the allegations set forth in the second paragraph under Section VII of Plaintiff's Original Petition.

47.     Nationwide denies the allegations set forth in the third paragraph under Section VII of Plaintiff's Original Petition. Nationwide further denies Plaintiff is entitled to the relief sought in the third paragraph under Section VII of Plaintiff's Original Petition.

48.     Nationwide denies the allegations set forth in the fourth paragraph under Section VII of Plaintiff's Original Petition. Nationwide further denies Plaintiff is entitled to the relief sought in the fourth paragraph under Section VII of Plaintiff's Original Petition.

49.     Nationwide denies the allegations set forth in the fifth paragraph under Section VII of Plaintiff's Original Petition. Nationwide further denies Plaintiff is entitled to the relief sought in the fifth paragraph under Section VII of Plaintiff's Original Petition.

50.     Nationwide denies the allegations set forth in the sixth paragraph under Section VII of Plaintiff's Original Petition. Nationwide further denies Plaintiff is entitled to the relief sought in the sixth paragraph under Section VII of Plaintiff's Original Petition.

51.     Nationwide denies the allegations set forth in the seventh paragraph under Section VII of Plaintiff's Original Petition. Nationwide further denies Plaintiff is entitled to the relief sought in the seventh paragraph under Section VII of Plaintiff's Original Petition.

## VIII.
## <u>ADDITIONAL DAMAGES</u>

52.    Nationwide denies all allegations set forth in Section VIII of Plaintiff's Original Petition.


## IX.
## <u>REQUEST FOR DISCLOSURES</u>

53.    Section IX contains a request for disclosure to Nationwide under the Texas Rules of Civil Procedure and requires no response from Nationwide. To the extent a response is required, Nationwide asserts that discovery in this case should be governed by the Federal Rules of Civil Procedure, Local Rules of the Northern District of Texas, and this Court's Scheduling Order.

## X.
## <u>FIRST REQUEST FOR PRODUCTION TO NATIONWIDE</u>

54.    Section X contains a request for production to Nationwide under the Texas Rules of Civil Procedure and requires no response from Nationwide. To the extent a response is required, Nationwide asserts that discovery in this case should be governed by the Federal Rules of Civil Procedure, Local Rules of the Northern District of Texas, and this Court's Scheduling Order.

## XI.
## [sic]

55.    Nationwide denies that the Texas Rules of Civil Procedure apply to this lawsuit. Nationwide is unable to admit or deny the amount of monetary relief Plaintiff seeks in this case for lack of information or knowledge sufficient to form a belief. Nationwide denies that Plaintiff is entitled to monetary relief in this suit. Nationwide denies the remaining allegations set forth in Section XI of Plaintiff's Original Petition.

## XII.
## PRAYER

56.     Nationwide denies the allegations and relief requested in the Prayer of Plaintiff's Original Petition.

## II.     NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY'S DEFENSES

57.     In addition to the foregoing specific denials, Nationwide asserts, without limitation, the following defenses:

### First Defense
### Policy Provisions

58.     Plaintiff cannot recover, in whole or in part, on his breach of contract claim, and consequently on any of the other causes of action alleged in Plaintiff's Original Petition, because the insurance policy issued by Nationwide to Plaintiff contains exclusions and provisions negating coverage, in whole or in part, for the damages alleged by Plaintiff.  Nationwide's contractual obligations are determined by the terms, conditions, limitations, and exclusions contained in the Policy and Nationwide relies on such terms, conditions, limitations, and exclusions in defense of the claims asserted against it.

* * *
## HOMEOWNER POLICY DECLARATIONS
* * *

**Policy Number:**                          **Policyholder:**
78 42 HR 101073                          **(Named Insured)**
                                                    RAYMOND J MENASION
**Issued:**                                      1028 BLUEBONNET DR
OCT. 09, 2019                              IRVING TX 75060-4550

Policy Period From:
Aug. 26, 2019 to Aug. 26, 2020
* * *

11

**SECTION I**

| Property Coverages | Limits of Liability |
|---|---|
| COVERAGE-A-DWELLING | $160,800 |
| COVERAGE-B-OTHER STRUCTURES | $16,080 |
| COVERAGE-C-PERSONAL PROPERTY | $120,600 |
| COVERAGE-D-LOSS OF USE | ALS* |

*ACTUAL LOSS SUSTAINED PAYMENT NOT TO EXCEED 24 MONTHS

**Deductible: $1,000 ALL PERILS**

In case of loss over under Section I, we cover only that part of each loss over the deductible stated.

**EXCEPTIONS**

2% OF COVERAGE A-DWELLING LIMIT = $3,216. THIS DEDUCTIBLE APPLIES TO WINDSTORM OR HAIL LOSSES.

* * *

* * *

**ADDITIONAL INTERESTS**

**FIRST MORTGAGEE**

JP MORGAN CHASE BANK
NA
ISAOA ATIMA
PO BOX 4700
DORAVILLE, GA 30362-0020

* * *

**Issued By:** Nationwide Property & Casualty Insurance Co.

* * *

H 01 00 TX 07 16

## SPECIAL PROVISIONS – TEXAS

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.

**DEFINITIONS**

Paragraph **C.1.** "Actual Cash Value" is replaced by the following:

1. "Actual Cash Value" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for depreciation.

The following are added to the **DEFINITIONS** section:

"Business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

* * *

**SECTION I – CONDITIONS**

Paragraph **A. Insurable Interest And Limit Of Liability** is replaced by the following:

**A. Insurable Interest And Limit Of Liability**

1. Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

    b. For more than the applicable limit of liability.

* * *

Paragraph **C. Duties After Loss** is replaced by the following:

   **C.  Duties After Loss**

      **1.  Your Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage or a representative of either:

   **a.**  Give prompt notice to us or our agent. . . .

       \* \* \*

   **d.**  Protect the property from further damage. If repairs to the property are required, you must:

      **(1)**  Make reasonable and necessary repairs to protect the property; and

      **(2)**  Keep an accurate record of repair expenses;

   **e.** Cooperate with us in the investigation of a claim;

   **f.** Prepare an inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   **g.** As often as we reasonably require:

      **(1)** Show the damaged property;

      **(2)** Provide us with records and documents we request and permit us to make copies; and

      **(3)** Submit to examination under oath, while not in the presence of another "insured", and sign the same. A parent or guardian may be present with a minor during any interview or examination;

\* \* \*

Paragraph **H. Suit Against Us** is replaced by the following:

**H. Suit Against Us**

      **1.** Except as provided in Paragraph **2.**, no suit or action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this Policy. Action must be brought against us within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

       \* \* \*

Paragraph **J. Loss Payment** is replaced by the following:

**J. Loss Payment**

   We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to receive payment.

   \* \* \*

Paragraph **L. Mortgage Clause** in Form **H 00 03** and Form **H 00 06** is replaced by the following:

**L. Mortgage Clause**

   **1.** We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the Declarations as interests appear.

   **2.** The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building structure.

   **3.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, the mortgagee has the right to receive loss payment if the mortgagee:

    **a.** At our request, pays any premium due under this Policy, if you have failed to do so;

    **b.** Submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so; and

    **c.** Has notified us of any changes in ownership, occupancy or substantial changes in risk known to the mortgagee.

**4.** If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

    **a.** The mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

    **b.** The mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

At our option, we may pay the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us, and you will pay your remaining mortgage debt to us.

\* \* \*

## AGREEMENT

\* \* \*

## DEFINITIONS

**A.** "We", "us" and "our" refer to the Company providing this insurance.

**B.** Throughout this policy, "you" and "your" refer to:

    **1.** The "named insured" shown in the Declarations;

    **2.** The spouse if a resident of the same household;

    **3.** The civil partner of the named insured by Civil Union or Registered Domestic Partnership filed and recognized by the state if a resident of the same household; or

    **4.** A "Domestic partner".

If the spouse or civil partner who has entered into a Civil Union or Registered Domestic Partnership with the named insured ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse or civil partner will be considered "you" and "your" under this policy but only until the earlier of:

**1.** The end of 90 days following the spouse's or civil partner's change of residency;

**2.** The effective date of another policy listing the spouse or civil partner as a named insured; or

**3.** The end of the policy period.

**C.** In addition, certain words and phrases are defined as follows:

    **1.** "Actual Cash Value" (Modified by endorsement).

    \* \* \*

    **5.** "Business" means:

        **a.** A trade, profession or occupation, including self-employment, engaged in on a full-time, part-time or occasional basis; or

        **b.** Any other activity engaged in for money or other compensation, except the following:

            **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total gross compensation for the 12 months before the beginning of the policy period;

            **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

\* \* \*

**8.** "Insured" means:

    **a.** You and residents of your household who are:

        **(1)** Your relatives; or

        **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

        \* \* \*

**9.** "Insured location" means:

    **a.** The "residence premises";

    **b.** The part of other premises, other structures and grounds used by you as a residence; and

        **(1)** Which is shown in the Declarations; or

        **(2)** Which is acquired by you during the policy period for your use as a residence;

    **c.** Any premises used by you in connection with a premises described in a. and b. above;

    **d.** Any part of a premises:

        **(1)** Not owned by an "insured"; and

        **(2)** Where an "insured" is temporarily residing;

    **e.** Vacant land, other than farm land, owned by or rented to an "insured";

    **f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

    **g.** Individual or family cemetery plots or burial vaults of an "insured"; or

    **h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

    \* \* \*

**13.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

\* \* \*

**15.** "Residence premises" means:

    **a.** The one-family dwelling where you reside;

    **b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

    **c.** That part of any other building where you reside;

    on the inception date of the policy period shown in the Declarations and which is shown as the "residence premises" in the Declarations.

    "Residence premises" also includes other structures and grounds at that location.

    \* \* \*

## SECTION I – PROPERTY COVERAGES

  **A. Coverage A – Dwelling**

    **1.** We cover:

        **a.** The dwelling on the "residence premises" shown in in the Declarations, including structures attached to the dwelling; \* \* \*

    **2. Coverage B – Other Structures**

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located, or the replacement, rebuilding, restoration, stabilization or value of such land;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.
      * * *

**D. Coverage D – Loss Of Use**

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value, and **3.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere. Payment will not exceed the actual loss sustained or 24 months from the date of loss, whichever occurs first.
   * * *

**E. Additional Coverages**

**1. Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      **(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

      **(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.
      * * *

**2. Reasonable Repairs**

   a. We will pay the reasonable cost incurred by you for necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

   b. If the measures taken involve repair to other damaged property, we will pay for those measure only if that property is covered under this policy and the damage to

that property is caused by an applicable Peril Insured Against. This coverage does not:

    **(1)** Increase the limit of liability that applies to the covered property; or

    **(2)** Relieve you of your duties, in case of a loss to covered property described in **C.4.** under Section **I** - Conditions.

        * * *

**11. Ordinance or Law**

  **a.**  The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the limit of liability that applies to Coverage **A** — Dwelling and provides coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

    **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

    **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

    **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

  **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

  **c.** We do not cover:

    **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law;

    **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants" in or on any covered building or other structure; or

    **(3)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

        * * *

## SECTION I – PERILS INSURED AGAINST

## A.  Coverage A – Dwelling And Coverage B – Other Structures

  **1.**  We insure against direct physical loss to property described in Coverages **A** and **B**.

  **2.**  We do not insure, however, for loss:

    **a.**  Excluded under Section **I** – Exclusions;

    * * *

    **c.**  Caused by:

      * * *

      **(6)** Any of the following:

        **(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

\* \* \*

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

\* \* \*

**(k)** Mismatch of color between undamaged material and new material used to replace old, weathered or oxidized damaged material; or

**(l)** Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products. \* \* \*

\* \* \*

## SECTION I – EXCLUSIONS

**B.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

\* \* \*

This Exclusion **A.1.** applies whether or not the property has been physically damaged, or if the irritant or contaminant has a function with respect to your property or "business".

\* \* \*

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

\* \* \*

**10. Diminution in Value**

Diminution In Value includes, but is not limited to, damages for any perceived or actual reduction in the market value of any property.

\* \* \*

**C.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.
2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.
3. Faulty, inadequate or defective:
   a. Planning, zoning, development, surveying, siting;
   b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction, backfilling;
   c. Materials used in repair, construction, renovation or remodeling; or
   d. Maintenance;

   of part or all of any property whether on or off the "residence premises".

* * *

## SECTION I – CONDITIONS

**A. Insurable Interest And Limit Of Liability**
(Modified by endorsement).

**B. Deductible**
Unless otherwise noted in this policy, the following deductible provision applies:
With respect to any one loss:
1. Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.
2. If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.
3. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property.

**C. Duties After Loss**
(Modified by endorsement).

**D. Loss Settlement**
In this Condition **D.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** — Property Coverages. Covered property losses are settled as follows:
1. Property of the following types:
   a. Personal property;
   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;
   c. Structures that are not buildings; and
      . . .
   at "actual cash value" at the time of loss but not more than the amount required to repair or replace.

2. Buildings under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:
   a. We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

19

      **(1)** The limit of liability under this policy that applies to the building;

      **(2)** The replacement cost of that part of the building damaged for like construction and use on the same premises; or

      **(3)** The necessary amount actually spent to repair or replace the damaged building.

    **b.** We will pay no more than the "actual cash value" of the damage until actual repair or replacement is complete, unless the cost to repair or replace the damage is both:

      **(1)** Less than 5% of the amount of insurance in this policy on the building; and

      **(2)** Less than $2,500.

\* \* \*

**H. Suit Against Us**
(Modified by endorsement).
\* \* \*

**J. Loss Payment**
(Modified by endorsement).
\* \* \*

**L. Mortgage Clause**
(Modified by endorsement).
\* \* \*

**Q. Policy Period**
This policy applies only to loss which occurs during the policy period.

**R. Dwelling**
We insure the dwelling, as described in the Declarations of this policy, only as the "residence premises", while occupied by the "insured" as the owner, for dwelling purposes and not otherwise. This condition applies, at the time of loss, to Coverage **A** — Dwelling, Coverage **B** — Other Structures and Coverage **C** — Personal Property as provided by this contract.

\* \* \*

59.    The assertion of any specific provision of the Policy in this Answer is not intended as a waiver or abandonment of any other applicable provisions of the Policy, which is asserted and incorporated herein in full by reference.

**Second Defense**
**Failure of Conditions Precedent**

60.    Plaintiff has failed to comply with one or more provisions of the Policy and, therefore, is precluded from bringing suit to enforce the Policy. The Policy expressly states:

**H. Suit Against Us**

    **1.** Except as provided in Paragraph **2.**, no suit or action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this Policy. Action must be brought against us within two years and one day

from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

61.     Specifically, Plaintiff has failed to:

**C. Duties After Loss**
   **3. Your Duties After Loss**
      In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage or a representative of either:
      **a.** Give prompt notice to us or our agent. . . .
         * * *
      **d.** Protect the property from further damage. If repairs to the property are required, you must:
         **(1)** Make reasonable and necessary repairs to protect the property; and
         **(2)** Keep an accurate record of repair expenses;
      **e.** Cooperate with us in the investigation of a claim;
      **f.** Prepare an inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
      **g.** As often as we reasonably require:
         **(1)** Show the damaged property;
         **(2)** Provide us with records and documents we request and permit us to make copies; and
         **(3)** Submit to examination under oath, while not in the presence of another "insured", and sign the same. A parent or guardian may be present with a minor during any interview or examination;

62.     For example, but without limitation, Plaintiff reported the Fire Claim two months after the fire at issue during which time he replaced the air conditioning unit where the fire originated and failed to preserve the damaged unit. Accordingly, because Plaintiff has not met all conditions precedent to filing this lawsuit, Plaintiff is contractually precluded from bringing suit against Nationwide to enforce the Policy.

**Third Defense**
**Failure to Mitigate/Contribution**

63.     Plaintiff is barred from any recovery from Nationwide, in whole or in part, due to Plaintiff's failure to mitigate the alleged damages and its contribution to its own alleged damages.

This includes, but is not limited to, Plaintiff's failure to properly maintain the roof, exterior and interior of the Property.

### Fourth Defense
### No Breach of Policy

64.     The Fire Claim and Hail Claim have each been properly investigated, adjusted, evaluated, and paid.  There has been no breach of the Policy, thereby precluding recovery of damages pursuant to any contractual and extra-contractual theory of liability, including violation(s) of the Texas Insurance Code and breach of the common law duty of good faith and fair dealing.

### Fifth Defense
### Lack of Coverage Precludes Extra-Contractual Liability

65.     The existence of coverage for an insurance claim is necessary to establish the basis of claims for violations of the Texas Insurance Code and the common-law duty of good faith and fair dealing.  Because Plaintiff's allegations are generally based upon Nationwide's alleged failure to timely pay benefits under the Policy, the absence of coverage for the allegedly unpaid amounts of the underlying insurance claims preclude the extra-contractual claims against Nationwide as a matter of law.

### Sixth Defense
### *Bona Fide* Dispute

66.     A *bona fide* controversy existed and continues to exist concerning Plaintiff's entitlement to insurance benefits from Nationwide. Under Texas law, Plaintiff carries the burden to establish that Nationwide unreasonably denied or delayed payment of an insurance claim when liability became reasonably clear. At all times during the lawsuit, Nationwide had a reasonable basis for their conduct based upon the investigations of the claims at issue. Moreover, Nationwide would show that a *bona fide* controversy existed and that liability, if any, under the Policy was not reasonably clear and remains so to date. In other words, nothing more than a *bona fide* coverage

dispute exists between the parties. Therefore, Plaintiff does not meet the threshold for extra-contractual damages in this case.

### Seventh Defense
### Deductible

67.     To the extent any damage to the Property is determined by the factfinder to be the result of the storm forming the basis of the Hail Claim, which is denied, Plaintiff's recovery is subject to the wind/hail deductible of $3,126 as shown in the Declarations of the Policy.

68.     Further, to the extent any damage to the Property is determined by the factfinder to be the result of the occurrence forming the basis of the Fire Claim, which is denied, Plaintiff's recovery is subject to the all-perils deductible of $1,000 as shown in the Declarations of the Policy.

### Eighth Defense
### Loss Settlement Provisions

69.     Nationwide relies on the loss settlement provisions set forth in the Policy limiting loss payments to actual cash value except as set forth in the Policy.

### Ninth Defense
### Limits of Liability

70.     Any recovery by Plaintiff is subject to the applicable policy limits set forth previously. Additionally, Plaintiff may not recover more than his financial interest in the Property.

### Tenth Defense
### Excessive Demand

71.     Nationwide asserts that Plaintiff is not entitled to attorney's fees as Plaintiff has asserted excessive demands. Plaintiff's counsel sent a demand letter dated November 8, 2020 addressed to Nationwide in which Plaintiff demanded $33,206.42 less the policy deductible and prior payments for "damages suffered by our client as it pertains to the hail claim." Plaintiff also demanded a total of $25,494.40 for "damages suffered by our client as it pertains to the fire claim."

Plaintiff's demand also seeks $6,300 in "reasonable and necessary attorneys' fees incurred." Plaintiff has acted unreasonably and in bad faith by demanding monies to which Plaintiff is not entitled under the Policy, thereby making the demand unreasonable and, consequently, excessive.

**Eleventh Defense**
**Statutory Limitations for Punitive Damages**

72.     Any recovery by Plaintiff for punitive damages would be subject to the limitations on liabilities and damages contained in Chapter 41 of the Texas Civil Practice and Remedies Code, as well as all other statutory damage caps provided by law.

**Twelfth Defense**
**Due Process and Equal Protection**

73.     To the extent Plaintiff seeks punitive damages, Nationwide invokes its right under the due process clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution. Nationwide affirmatively pleads that Plaintiff's pleading of punitive and/or exemplary damages violates the due process clauses of the Fifth and Fourteenth Amendments.

**Thirteenth Defense**
**Punitive Damage Limitation**

74.     To the extent Plaintiff seeks punitive damages, Nationwide asserts that such request should be denied because it violates the equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, the provisions of the Eighth Amendment to the United States Constitution, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

**Fourteenth Defense**
**Fortuity Doctrine**

75.     Plaintiff's coverage under the Policy is precluded and Plaintiff was, or should have been, aware of an ongoing loss or known loss when the Policy was purchased.

**Fifteenth Defense**
**Payment**

76.     The Hail Claim has been properly adjusted, investigated and paid. On May 21, 2020, Nationwide issued payment in the amount of $3,392.78 to Plaintiff for covered losses. In addition, on January 22, 2021, Nationwide issued payment in the amount of $3,972.01 for damages arising from the Hail Claim. In total, Nationwide issued Plaintiff payment totaling $7,364.79 under the Hail Claim.

77.     Further, the Fire Claim has been properly adjusted, investigated and paid. On May 22, 2020, Nationwide issued payment in the amount of $5,079.29 to Plaintiff for covered losses. In addition, on January 26, 2021, Nationwide issued payment for additional damages arising from the Fire Claim totaling $362.62. In total, Nationwide issued Plaintiff payment totaling $5,441.91 under the Fire Claim.

78.     Plaintiff's damages, if any, must be offset by credit for indemnity amounts paid to or on behalf of the Plaintiff.

**Sixteenth Defense**
**Plaintiff Failed to Comply with Notice Requirements of Tex. Ins. Code § 542A.003**

79.     Chapter 542A of the Texas Insurance Code applies to Plaintiff's lawsuit as it is an action on a claim under an insurance policy covering real property that arises from alleged wind and/or hail damage. Plaintiff failed to give proper notice under Tex. Ins. Code § 542A.003, precluding or limiting any right Plaintiff may have to recover attorneys' fees. Specifically, Tex. Ins. Code § 542A.003 requires that Plaintiff provides written notice to Nationwide not later than

the 61st day before the date Plaintiff files an action to which Chapter 542A applies that must include:

(1)     a statement of the acts or omissions giving rise to the claim;

(2)     the specific amount alleged to be owed by the insurer on the claim for damage to or loss of covered property; and

(3)     the amount of reasonable and necessary attorney's fees incurred by the claimant, calculated by multiplying the number of hours actually worked by the claimant's attorney, as of the date the notice is given and as reflected in contemporaneously kept time records, by an hourly rate that is customary for similar legal services.

80.     Furthermore, if an attorney or other representative gives the notice required under Chapter 542A, the attorney or representative must:

(1)     provide a copy of the notice to the claimant; and

(2)     include in the notice a statement that a copy of the notice was provided to the claimant.

81.     Plaintiff's counsel sent a demand letter dated November 8, 2020 addressed to Nationwide in which Plaintiff demanded $33,206.42 less the policy deductible and prior payments for "damages suffered by our client as it pertains to the hail claim." Plaintiff also demanded a total of $25,494.40 for "damages suffered by our client as it pertains to the fire claim." Plaintiff's demand also seeks $6,300 in "reasonable and necessary attorneys' fees incurred," however, this amount does not segregate counsel's fees incurred on the Hail claim from the Fire claim. Plaintiff's demand does not provide presuit notice as required by Tex. Ins. Code § 542A.003.

82.     Accordingly, pursuant to Tex. Ins. Code § 542A.007(d), the Court may not award Plaintiff any attorney's fees incurred after the date Nationwide files its Original Answer asserting this defense (April 15, 2021). In the alternative, to the extent the demand letter is deemed timely and otherwise in compliance with the presuit notice requirements under Chapter 542A, the

provisions of § 542A.007(a) and (c) may limit or preclude recovery of attorney's fees based on the excessive amounts demanded by Plaintiff.

**Seventeenth Defense:**
**Offset and Credit**

83.    Plaintiff's damages, if any, must be offset by the amount of applicable policy deductibles, as well as a credit for indemnity amounts paid to or on behalf of the Plaintiff. Nationwide will seek any and all available offsets and credits to which it is entitled under law.

**III. PRAYER**

84.    WHEREFORE, PREMISES CONSIDERED, Defendant Nationwide Property and Casualty Insurance Company respectfully prays that Plaintiff takes nothing, that Nationwide be awarded its reasonable and necessary attorneys' fees and costs, and for such other and further relief to which Nationwide may be justly entitled.

Respectfully submitted,

*/s/ Patrick M. Kemp*
Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Avenue, Suite 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 - Facsimile

**ATTORNEYS FOR DEFENDANT**
**NATIONWIDE PROPERTY AND CASUALTY**
**INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served electronically via CM/ECF this 3rd day of September, 2021 to:

Benjamin R. Crowell
Brennan M. Kucera
Crowell & Kucera, PLLC
2028 E. Ben White Blvd. Ste. 240-2015
Austin, Texas 78741
ben@ck-firm.com
brennan@ck-firm.com

*/s/ Patrick M. Kemp*
Patrick M. Kemp